## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS
## AT TOPEKA

| | | |
|---|---|---|
| CAROL ROBINSON, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| REGENA ROBINSON, | ) | Case No.: |
| | ) | |
| Plaintiffs, | ) | |
| vs. | ) | |
| | ) | |
| STATE OF KANSAS DEPARTMENT OF | ) | |
| CORRECTIONS, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| DONA HOOK, WARDEN, | ) | |
| TOPEKA CORRECTIONAL FACILITY | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT SEEKING EMERGENCY INJUNCTIVE RELIEF FOR VIOLATIONS OF FIRST, SIXTH, EIGHTH AND FOURTEENTH AMENDMENTS

COME NOW Plaintiffs Carol Robinson and Regena Robinson, and for their causes of action against Defendants State of Kansas Department of Corrections ("KDOC"), and Warden Dona Hook (collectively, "Defendants"):

## INTRODUCTION

This action arises out of KDOT's refusal to care for and address Plaintiff Regena Robinson's health and well-being while in State care. Plaintiff Regena Robinson made complaints regarding her breathing, or lack thereof, back pain, dizziness, and a metallic taste in her mouth, as well as others. Defendants effectively ignored all of her health concerns, notwithstanding the fact they gave her blood pressure medication that did not assist in lower her blood pressure. Plaintiff Regena passed out from not being able to breath and finally Defendants transported her to the hospital where she

immediately went into surgery. Plaintiff Regena was diagnosed with Goodpasture Syndrome, a rare autoimmune disorder where the body mistakenly makes antibodies that attack the lungs and kidneys. Defendants' failure to properly care for Plaintiff Regena resulted in Plaintiff Regena's kidney's failing, damage to her lungs as they were filled with fluid, as well as other issues.

Defendants continue to refuse her mother the ability to visit her in the hospital, after she was literally on her death bed. Her status as an inmate has kept her family from being able to visit her and assist with medical decisions as telephone calls with Plaintiff Regena make clear that she is not in a condition to make such decisions for herself. Most importantly, **TODAY, DEFENDANTS ARE ATTEMPTING TO HAVE HER RELEASED BACK TO TOPEKA CORRECTIONAL FACILITY, WHEN SHE IS NO WHERE NEAR READY TO LEAVE THE HOSPITAL GIVEN HER CURRENT MEDICAL CONDITION.** Plaintiff Regena is going to have to be on dialysis for the remainder of her life and is still hemorrhaging from her injuries caused by Defendants lack of medical care.

This Complaint and Motion filed contemporaneously herewith are asking the Court to immediately halt Defendants' attempt to release Plaintiff from the hospital, to allow her mother and attorneys to see her immediately, and other relief the Court deems just and proper.

## PARTIES

1.      Plaintiff Regena Robinson is an inmate, currently in the custody of KDOC, at the Topeka Correctional Facility, thereby residing in Topeka, Kansas.

2.      Plaintiff Carol Robinson is Plaintiff Regena Robinson's mother and a resident of Wichita, Kansas.

3.      Defendant State of Kansas, Department of Corrections is authorized to sue or be sued in its own name and served through the Kansas Attorney General, K.S.A. 60-304(d)(5), located

at 120 SW 10th Avenue, 2nd Floor, Topeka, Kansas 66612.

4.      Defendant Dona Hook, Warden of the Topeka Correctional Facility is the warden of the Topeka Correctional Facility as has custody of Plaintiff Regena Robinson. Ms. Hook is being sued in her personal and official capacity as Warden of the Topeka Correctional Facility and can be served through the Kansas Attorney General, K.S.A. 60-304(d)(5), located at 120 SW 10th Avenue, 2nd Floor, Topeka, Kansas 66612.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3) because Plaintiffs present federal claims arising under the First, Sixth, Eighth and Fourteenth Amendments to the United States Constitution.

6.      Venue is proper under 28 U.S.C. §§ 1391(b)(1) because all Defendants are residents of Kansas; and 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in the District of Kansas.

## FACTS

7.      Plaintiff Regena Robinson ("Plaintiff Regena") is currently an inmate in the custody of KDOC; Plaintiff Regena Robinson was sent to Topeka Correctional Facility ("TCF") on or about February 28, 2023, because of a probation violation (the initial violations were robbery and theft). (Ex. 1). Plaintiff Regena's earliest release date is April of 2025. *Id.*

8.      About or around September of 2023, Plaintiff Regena began reporting to Defendant that she was having trouble breathing and was experiencing back pain.

9.      On multiple occasions Plaintiff went to the onsite medical facility at TCF making complaints of trouble breathing, back pain, dizziness, high blood pressure and a metallic taste in her mouth; in fact her blood pressure was high (210/109—which is stroke range) and she was given

Clonidine for her blood pressure.

10.     Plaintiff Regena had to utilize a wheelchair, with someone else pushing, when going to the onsite medical facility because she was too weak to walk as she was having so much trouble breathing.

11.      Notably, the medication did not bring her blood pressure down.

12.     In April of 2024, at the onsite medical facility, Plaintiff Regena obtained an x-ray because of her continued back pain; the x-ray showed a possible fractured rib.

13.     Additionally, at some point, Plaintiff Regena may have underwent an ultrasound and bloodwork was taken from Plaintiff Regena (both would have been done at the onsite medical facility); Plaintiff Regena was never informed of the results of the ultrasound nor the bloodwork.

14.     Plaintiff Regena's condition continually got progressively worse as none of her complaints or symptoms were ever effectively treated.

15.     At one point, the medical staff at TCF told Plaintiff Regena that maybe she had COVID and that was the reason for her breathing issues; yet, Plaintiff was not tested for COVID and was sent back into the general population.

16.     Medical staff at TCF would tell Plaintiff Regena to back to her cell and lay down, that she was just sick, and, essentially, to figure out her what was going on with her health when she gets released from TCF in 2025.

17.     On September 25, 2024, Plaintiff Regena was having so much trouble breathing that she told her roommate that if she did not make it, that her roommate could keep her stuff. At that point, Plaintiff Regena's roommate wheeled her down to the medical facility.

18.     On September 25, 2024, Plaintiff Regena was transported to the hospital after she was unable to breath and passed out.

19.     Immediately upon arriving at the hospital Plaintiff Regena had to undergo surgery for a shunt for dialysis.

20.     Plaintiff Regena was diagnosed with Goodpasture Syndrome, a rare autoimmune disorder in which the body mistakenly makes antibodies that attack the lungs and kidneys.

21.     Defendants' complete Defendants' lack of treatment led to the follow physical injuries:

    a.  failure of Plaintiff Regena's kidneys;

    b.   severe damage to her lungs as they were filled with fluid;

    c.  Plaintiff Regena being on a breathing machine; and

    d.  Plaintiff Regena will need dialysis for the remainder of her life because of the complete inability of her kidneys to function.

22.     As Plaintiff Regena's emergency contact, Plaintiff Carol was contacted by TCF on September 25, 2024, *after* Plaintiff Regena was out of surgery.

23.     Defendants knew or should have known that by contacting Plaintiff Carol *after* Plaintiff Regena was out of surgery there was a possibility that they would be informing Plaintiff Carol of Plaintiff Regena's death; yet, Defendants did not find it important enough to contact Plaintiff Carol *prior* to surgery so that she may come and see her daughter.

24.     One doctor at the hospital who was willing to speak with Plaintiff Carol informed her that Defendants were neglectful in Plaintiff Regena's care and that her current condition could have been prevented with proper care.

25.     Plaintiff Carol is unable to ascertain what hospital Plaintiff Regena is receiving care at because of her status as an inmate at TCF, and Plaintiff Carol not been able to speak with hospital staff because of the same.

26.     Plaintiff Regena has called Plaintiff Carol and informed her of the above, but Plaintiff Carol is unable to ascertain important information as to her condition as Plaintiff Regena often on pain medication and other medication.

27.     Plaintiff Carol has not been able to visit Plaintiff Regena since she has been in the hospital and Defendants have denied her the ability to visit her daughter.

28.     Plaintiff Regena has been informed she will need to be on dialysis for the for the remainder of her life.

29.     The hospital which Plaintiff Regena is currently being treated only has one dialysis machine, thus, Plaintiff Regena is not getting treatment when she needs, but when the machine is available.

30.     Prior to being at TCF, Plaintiff Regena had no diagnosis for any autoimmune disease.

31.     Plaintiff Regena has no durable power of attorney or directive regarding her medical care.

32.     Plaintiff Regena, in her current state, is likely not in a condition to make her own medical decisions.

33.     Plaintiff Regena, upon arriving at the hospital potentially still unconscious, was taken into surgery, and upon information and belief, no one was consulted regarding the surgery and its risks.

34.     Plaintiff Carol and other family members of Plaintiff Regena have attempted to contact Defendants several times to no avail. Plaintiff Carol has received no information regarding Plaintiff Regena's care since the initial call informing Plaintiff Carol that Plaintiff Regena was transported to the hospital and just came out of surgery.

35.     Defendants knew of Plaintiff Regena's condition and symptoms and did nothing.

36.     Defendants' knowledge of Plaintiff Regena's condition and symptoms required Defendants to administer proper medical care.

37.     Defendants' failure to administer proper medical care violated Plaintiff Regena's civil rights.

38.     Defendants' failure to administer proper medical care was intentional and/or with reckless disregard for Plaintiffs' rights.

39.     Defendants' failure to approve Plaintiff Carol to visit Plaintiff Regena is intentional and/or with reckless disregard for Plaintiffs' rights.

40.     Defendants' failure to respond to Plaintiff Carol and other family members who have contacted them regarding Defendant Regena and her health and well-being is intentional and/or with reckless disregard for Plaintiffs' rights.

41.     Plaintiff Carol has and continues to have a consistent and meaningful relationship with Plaintiff Regena.

42.     Plaintiffs should not be required to exhaust any administrative remedies as Plaintiff Regena's condition is so dire that it would be unconscionable, unjust, and further violate Plaintiffs' rights.

43.     Plaintiff Carol, as Plaintiff Regena's mother, must be allowed to visit and make medical decisions for her daughter as next of kin, or at the very least, be allowed to visit her daughter and assess her health condition.

44.     Plaintiff Carol has no adequate remedy at law to address this situation and attend to her daughter and her medical needs at a time when Plaintiff Regena's health and well-being is unstable and uncertain.

45.     Moreover, to date, Defendants have severely and improperly limited Plaintiff

Regena's attorneys from speaking with her. During her hospitalizations the KDOC has prevented Plaintiff Regena's family and attorneys from knowing her location, being able to contact her, having access to her to assess her condition and assist in making medical decisions. Thus, this Complaint and accompanying motion are not verified because of KDOC's refusal to allow her attorneys contact.

46.    This is an action for ***emergency injunctive relief***, to compel Defendants to provide Plaintiff Regena with access to her family and attorneys as required by the First, Sixth, and Fourteenth Amendments and to provide Plaintiff Regena with the nutrition and medical care required by the Eighth and Fourteenth Amendments.

## COUNT I
### DELIBERATE INDIFFERENCE TO SERIOUS MEDICAL NEEDS IN VIOLATION OF THE EIGHTH AND FOURTEENTH AMENDMENTS
### (REQUEST FOR EMERGENCY INJUNCTIVE RELIEF)

47.    Plaintiffs incorporate the foregoing as if fully stated herein.

48.    Plaintiff Regena is suffering from Goodpasture Syndrome, symptoms of which have caused her substantial pain for around a year. During her stay at TCF, Plaintiff Regena's condition, which had yet to be diagnosed, continually worsened for around or about a year; and currently, Plaintiff Regena is receiving care at a hospital that does not have the sufficient and/or proper equipment to properly provide care to her.

49.    The KDOC is aware and has been repeatedly alerted to Plaintiff Regena serious and exigent medical needs, including, but not limited to, Plaintiff Regena's verbal and written requests for treatment and care, requests made by her attorneys, and upon information and belief, by examinations, tests, and scans completed by Defendants or Defendants' agents.

50.    While acting under color of state law, the KDOC has acted, and continues to act, with deliberate indifference to Plaintiff Regena's serious documented medical needs arising from her autoimmune syndrome, including Plaintiff Regena's visually and audibly obvious needs for

appropriate and effective pain management, nutrition, and assistance breathing.

51. As a direct result of the KDOC's deliberate indifference, Plaintiff Regena has suffered and continues to suffer from (i) the lack of treatment and care for her Goodpasture Syndrome resulting in the loss of her kidney and damage to her lungs which is not yet known; and (ii) lack of proper care at the hospital which could result in further damage to Plaintiff Regena.

52. The KDOC's acts and omissions have been, and continue to be, intentional, willful, wanton, reckless, and malicious, and demonstrate complete and deliberate indifference to and a conscious and reckless disregard to Plaintiff Regena's rights.

53. Plaintiff Regena is entitled to emergency, preliminary injunctive relief requiring KDOC to transfer Plaintiff Regena to a suitable hospital or medical facility that has the proper staff and equipment to address the serious condition Defendants' actions have exacerbated.

54. Plaintiff Regena has a substantial likelihood of success on the merits of this claim, in that the evidence shows the KDOC intentionally disregarded Plaintiff Regena's complaints to the point her kidneys failed, her lungs filled with fluid, and her body could no longer withstand the internal damage, in violation of her Eighth Amendment rights.

55. Plaintiff Regena will suffer irreparable injury if the Court denies this request for a preliminary injunction because she will continue to suffer from severe pain and be denied proper medical care at a medical facility that has the proper staff and equipment to address her medical issues caused by Defendants acts and omissions. Moreover, Plaintiff Regena will continue to be denied access to her family and attorneys.

56. Plaintiff Regena's injury outweighs any potential injury to Defendants, which Plaintiff Regena dies any injury will occur, in that Plaintiff Regena's condition was caused by Defendants' failure to provide proper medical care; now, Defendants are continuing to deny Plaintiff Regena

proper medical care by not allowing her to be transferred to a medical facility that can properly address her condition. Additionally, Plaintiff Regena is being denied access to family when her condition and ability to made decisions, specifically medical decisions, is uncertain. Further yet, Plaintiff was being held in minimum security while at TCF.

57.     The preliminary injunction is not adverse to the public interest, but actually furthers the public interest because Plaintiff Regena presents no safety concerns, especially in her condition, and because the public has a cognizable and important public interest in preventing the cruel treatment, denial of medical care, denial of family access in times of severe physical health issues, and denial of access to one's attorney.

## COUNT II
### FAILURE TO PROVIDE ACCESS TO THE COURTS IN VIOLATION OF THE FIRST, SIXTH, AND FOURTEENTH AMENDMENTS
### (REQUEST FOR EMERGENCY INJUNCTIVE RELIEF)

58.     Plaintiffs incorporate the foregoing as if fully stated herein.

59.     The KDOC has prevented Plaintiff Regena from communicating with the outside world, in violation of the First Amendment, by actively concealing his location from his family and his counsel and preventing phone calls to him.

60.     As a result, Plaintiff Regena has been cut off from her attorneys-at-law. This is actively interfering with her access to the courts and freedom to petition the government for a redress of grievances, in violation of the First Amendment, because Plaintiff Regena, desires to work toward and prepare all necessary engagements and documents to investigate and prepare his § 1983 claims.

61.     The KDOC's active hiding of Plaintiff Regena, and KDOC's refusal to allow her attorneys to speak with her, is interfering with their efforts to adequately and effectively advocate on her behalf. This is a concrete prejudice to pending litigation. As further evidence of State's inference with Plaintiff's Regena's constitutional rights, counsel cannot obtain a Verified Petition/motion or

affidavit, as counsel does not have regular and confidential access to their client.

62.     Plaintiff Regena is entitled to emergency, preliminary injunctive relief requiring KDOC to immediately disclose her location to her attorneys during any transportation, arrange for regular confidential phone calls (all phone calls have been in the presence of the guard stationed in Plaintiff Regena's hospital room) and visits, and to allow Plaintiff Regena's family to visit her.

## COUNT III
### FAILURE TO ALLOW FAMILY COMPANIONSHIP IN VIOLATION OF THE FOURTEENTH AMENDMENT
### (REQUEST FOR EMERGENCY INJUNCTIVE RELIEF)

63.     The Due Process Clause of the Fourteenth Amendment state that, "No state shall deprive any person of life, liberty, or property without due process of law."

64.     Integrity of the familial unit has found protection in the Due Process Clause of the Fourteenth Amendment, the Equal Protection Clause, and the Ninth Amendment. *See Stanley v. Illinois*, 405 U.S. 645 (1972).

65.     The Tenth Circuit has held that parents have a constitutionally protected right to the companionship of their adult children. *Trujillo v. Board of County Commissioners*, 768 F.2d 1186 (10th Cir. 1985); *see also, Troxel v. Granville*, 530 U.S> 57 (2000).

66.     Thus, under the Fourteenth Amendment, Plaintiff Carol may not be deprived her liberty right of companionship and society with Plaintiff Regena.

67.     Defendants are depriving Plaintiff Carol of her liberty right to companionship and society with Plaintiff Regena by not giving her information or the ability to visit and assist in the medical decisions for which Plaintiff Regena likely does not have the capacity to make.

68.     Plaintiffs have been denied this constitutionally protected right without being afforded the minimum level of due process.

69.     Plaintiff Regena's health and well-being is uncertain, and both have a right to have to

Plaintiff Carol assisting in making healthcare decisions if Plaintiff Regena is unable.

70.     Depriving Plaintiff Carol access to Plaintiff Regena deprives Plaintiffs due process.

71.     Plaintiffs are being denied their constitutional right and have no other adequate remedy at law.

72.     Plaintiffs have been and continue to be injured by Defendants acts and omissions.

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in favor of Plaintiffs and against Defendants as follows:

(a)  Temporarily enjoin Defendants from denying Plaintiff Carol access to Plaintiff Regena;

(b)  Preliminarily enjoin Defendants from denying Plaintiff Carol access to Plaintiff Regena;

(c)  Enjoin Defendants, its officers, agents and employees from engaging in any of the actions depriving Plaintiffs of their constitutional rights as set forth herein;

(d)  Declare that Defendants actions constitutes a violation of Plaintiffs' Fourteenth Amendment rights.

(e)  Award Plaintiffs their attorneys' fees and costs incurred in bringing this action, including attorneys' fees and costs under 42 U.S.C. § 1988(b) for successful 42 U.S.C. § 1983 claims against State officials;

(f)  Retain jurisdiction to render any and all further orders that this Court may enter; and

(g)  Grant such other and further relief as this Court deems just and proper.


Respectfully submitted,

WEBSTER LAW, LLC.
/s/ Madison J. McBratney
Madison J. McBratney KS Bar #: 29904
1317 W. 13th Terrace,
Level #4/A
Kansas City, MO, 64102

Office Ph. (816) 629-6055
Direct Ph. Line (816) 629-6042
Fax. (816) 934-1194
E-mail: nmcbratney@sjwebsterlaw.com
Attorney for Plaintiffs